## In re PIERIS.

(Supreme Court, Appellate Division, Second Department. April 24, 1903.)

1. ATTORNEY AND CLIENT—PROCEEDING TO DETERMINE ATTORNEY'S LIEN—JURISDICTION.

Code Civ. Proc. § 66, provides that an attorney of a party to an action or special proceeding shall have a lien on his client's cause of action, claim, or counterclaim which attaches to a verdict, report, decision, judgment, or final order in the client's favor, and that the court, on petition of the client or attorney, may determine and enforce the lien. An agreement between an attorney and client provided for a contingent fee for the rendition of services in obtaining for the client certain money which the grandmother of the client had on deposit in bank at the time of her death, but of which the client had no knowledge previous to the making of the agreement. An application for the issuance of letters of administration to the client was made in the Surrogate's Court, and granted by that court, but the client refused to qualify as administratrix. Thereafter the client commenced a proceeding to determine the attorney's lien. *Held*, that the Surrogate's Court did not have exclusive jurisdiction of the proceeding, but that such jurisdiction was properly exercised by the Special Term.

2. SAME—AGREEMENT FOR CONTINGENT FEE—VALIDITY.

An attorney, learning that a bank was advertising for the heirs of a depositor, who had died, leaving money on deposit, went to a person whom he knew to be next of kin to the decedent, and stated that he knew of money belonging to the estate, which he could obtain for the heir. He refused to disclose the nature of his information or the location or amount of the money unless the heir would sign an agreement providing for a contingent fee of 33⅓ per cent. of the amount obtained. The heir insisted on consulting with other counsel and with friends before signing the agreement, but the attorney refused to have anything to do with the matter or to disclose his information unless the heir signed the agreement without consulting with anybody, and promised to tear up the paper if the heir should be dissatisfied, but later refused to do so. The amount involved was about $2,300. *Held*, that a court of equity was justified in setting aside the agreement, and fixing the attorney's compensation at a reasonable sum.

3. SAME—COMPENSATION.

Three hundred dollars is a sufficient compensation for attorney's services in filing an application for letters of administration.

Appeal from Special Term, Kings County.

Application by Adele Tillotson Pieris against George William Clune, an attorney at law, for an order to determine the attorney's lien for certain services rendered by him. From an order denying the attorney's motion to set aside a referee's report and confirming the report, the attorney appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Thomas Abbott McKennell, for appellant.

Francis A. McCloskey, for respondent.

HIRSCHBERG, J.   Ellen Maria Clune, the grandmother of the respondent, died intestate in 1857, leaving an account in the Bank for Savings, Manhattan Borough, New York, amounting to upwards of $2,300. In November, 1900, the bank advertised for information as to the heirs or next of kin of the depositor. The advertisement came to the notice of the appellant, who is an attorney at law practicing in the city, and a cousin of the respondent, who is the only next of kin of the deceased. The appellant, shortly after seeing the advertisement, visited the respondent (they being previously unacquainted), and procured from her on December 11, 1900, a signed agreement or authority, as follows:

"I hereby authorize and empower George Wm. Clune as my Attorney to demand, receive or collect in my stead and for me any money or monies credited to or coming to Ellen Maria Clune or to which the said Ellen Maria Clune was entitled to, or her heirs are now entitled to, and to obtain the same for me as heir of said Ellen Maria Clune, and I agree to pay him for collecting the same, one-third (⅓) of the amount recovered or received. All expenses of any kind whatsoever are to be paid from the one-third received by the said George Wm. Clune, my attorney.

"Dec. 11, 1900.                                    Adele T. Pieris."

The appellant rendered certain services pursuant to the authority conferred, the details of which need not be stated, but he brought no action and instituted no special proceeding in the Supreme Court. He did apply in the Surrogate's Court of the county of New York for the issuance of letters of administration to the respondent upon the estate of the deceased, which application was granted by that court; but the respondent had then become dissatisfied with the terms of the agreement, and refused to qualify as administratrix through the appellant's agency, or to deal with or recognize him further as her attorney. On May 16, 1901, the respondent procured on petition an order of the Supreme Court requiring the appellant to show cause why an order should not be granted, pursuant to the provisions of section 66 of the Code of Civil Procedure, determining his lien. On the return day a reference was directed requiring the referee to take proof of the facts, and to report the same with his opinion. The referee, after taking proof, reported the same, with his opinion, in the following words, the "paper" alluded to being the authorization signed by the respondent on December 11, 1900:

"I am of the opinion that in failing to advise the client of the amount of her interest in the fund, which was two thousand three hundred and thirty-five and 98/100 dollars, the persistent persuasion of her by him not to have independent advice before signing the paper, the promise to tear up the paper if she should be dissatisfied, and the failure to do so upon the expression of the dissatisfaction, makes such paper no contract between the attorney and the client. It is also my opinion that for the work done in this case, as hereinbefore set forth, one-third of a fund of two thousand three hundred and thirty-five and 98/100 dollars is an unjustly excessive charge, and it is my opinion that the reasonable value of the attorney's services is three hundred ($300) dollars."

On the appellant's motion to dismiss the proceedings the order appealed from was granted denying the same, and further ordering that the report be "in all respects confirmed."

The section of the Code of Civil Procedure under which this pro-

ceeding was instituted gives to the attorney of a party to an action or special proceeding a "lien upon his client's cause of action, claim, or counterclaim, which attaches to a verdict, report, decision, judgment, or final order in his client's favor, and the proceeds thereof in whosesoever hands they may come." The section further provides that "the court, upon the petition of the client or attorney, may determine and enforce the lien." The remedy herein provided is not exclusive, but cumulative, for a court of equity has always had power to ascertain and enforce liens. Fischer-Hansen v. Brooklyn Heights R. R. Co., 173 N. Y. 492, 502, 66 N. E. 395. It is true that the only legal proceeding conducted in this case was the special proceeding in the Surrogate's Court, the direct object of which was to procure letters of administration. The ultimate purpose, however, was undoubtedly to enable the respondent to effectively assert a claim to the money on deposit in the bank both as administratrix and as next of kin, and upon the entry of the decree her title to that fund may be said for present purposes to have been practically adjudicated in her favor. The evidence indicates that her right to the money is undisputed, excepting that the appellant has filed with the officers of the bank a claim to a lien upon one-third of the amount, and such sum remains undrawn, apparently subject to the determination of the claim. While it is probable that the appellant's lien, in so far as it is dependent upon the proceedings in the Surrogate's Court, might be ascertained and determined there (Matter of Regan, 167 N. Y. 338, 342, 60 N. E. 658), the jurisdiction of that court cannot be exclusive, especially as those proceedings were incidental only to the general services agreed to be rendered, which included a disclosure of the existence of the claim, its status and extent, and its collection by whatever lawful means and expenditure might be necessary.

It was held in Matter of King, 168 N. Y. 53, 60 N. E. 1054, that upon the petition of the client or attorney under the section of the Code in question the court not only has jurisdiction, but it must either itself, or by a reference, in its discretion, determine the amount of a client's indebtedness to his attorney, as the provision conferring such summary power only provided a new remedy for an existing right, is not unconstitutional, and the parties are not entitled to a jury trial. The question presented, of course, is not one relating to the general employment of counsel, or the rendition of professional services, where no legal proceedings are pending or result in behalf of the client, or in which he is interested, but applies only to the case at hand, where the employment is to collect a specific fund, and legal proceedings are conducted in aid of that purpose. I see no reason, under the authorities, for denying the jurisdiction of the court to ascertain and determine the lien which the appellant has upon the deposit in this case and upon the proceedings taken in order to collect it.

There is no ground for disturbing the result upon the merits. The respondent did insist upon an opportunity to obtain independent advice several times before she signed the authorization as the appellant himself admits. He did not tell her where the money was, nor its exact amount. The information conveyed to her was that he had

found some money which belonged to her grandmother, and which he could procure for her. When she finally insisted upon seeing a friend before she signed, he threatened to take no further steps in the matter, giving the following account of the termination of the interview:

"She still spoke about seeing this friend before signing. I arose, and said, 'If you want me to go ahead, you have got to have confidence in me; if not, then I will not proceed.' She said, 'Of course, I want you to get the money for me, but I haven't had experience with lawyers.' I told her that the relations between a lawyer and client were sacred, and that, as I knew about this money, that, if she wanted me to go ahead with it, that I wanted to be protected. She then signed the paper."

I think a court of equity having jurisdiction may, in the adjustment of the indebtedness between client and attorney, discard the agreement so procured as not conclusively binding upon the former, and limit the lien to such an amount as will afford ample compensation. It cannot be said upon the proof that the sum fixed by the referee is insufficient. The order should be affirmed.

Order affirmed, with $10 costs and disbursements. All concur. ·